```
         UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF WEST VIRGINIA
                AT CHARLESTON
```

**LYNN DUNFEE,**

    **Plaintiff,**

v.                                      Civil Action No. 2:10-01308

**ALLSTATE INSURANCE COMPANY,**

    **Defendant.**

### MEMORANDUM OPINION AND ORDER

Pending is the motion of defendant Allstate Insurance Company ("Allstate"), filed July 25, 2011, for summary judgment or, in the alternative, for partial summary judgment as to plaintiff's claim for punitive damages.

### I.  Background

Plaintiff Lynn Dunfee resides in Ravenna, Ohio. (Def.'s Mot., Ex. D, Sworn Statement of Lynn Dunfee ("Plaintiff's Statement") at 4).  She also owns a personal residence in Kincaid, West Virginia (the "Kincaid residence"), in which her son, Joshua Auclair, resided. (<u>Id.</u> at 55).  In the early morning hours of January 21, 2010, the Kincaid residence suffered considerable fire damage, the result of an

intentionally ignited blaze. (Def.'s Mot., Ex. G, Report of Federated Investigations Service, Corp. ("Investigation Report") at 9).

Dunfee had been visiting the Kincaid residence in the days preceding the fire, but left for home on the morning of January 20, 2010, at approximately 11:00 a.m. (Plaintiff's Statement at 59). Auclair reports that he remained at the house until some time between 9:30 p.m. and 11:00 p.m. that evening, before departing to visit his son in New Hampshire, with a planned but unannounced stop at his mother's home in Ohio. (Def.'s Mot., Ex. F, Sworn Statement of Joshua Auclair ("Auclair Statement") at 41-46). He arrived at Dunfee's home in Ravenna between 8:00 a.m. and 9:00 a.m. the next morning. (Plaintiff's Statement at 77; Auclair's Statement at 42-43). Without stops, the trip from Kincaid to Ravenna takes approximately four and one-half hours. (Plaintiff's Statement at 59-60).

At the time of the fire, the Kincaid residence was insured for $45,000 under a homeowner's insurance policy (the "Policy") issued by Allstate.[1] (See Def.'s Mot., Ex. A, Allstate

---

[1] According to Dunfee's estimates, the Kincaid residence was worth between $20,000 and $32,000 at the time of the fire. (Def.'s Mot., Ex. I, Plaintiff's 2007 Bankruptcy Filings ("Bankruptcy Filings") ($20,000) at 17; Def.'s Mot., Ex. E, Deposition of Lynn Dunfee ("Dunfee Depo") ($32,000) at 20).

Insurance Company Standard Select Value Homeowners Policy).  The Policy contains the following relevant exclusions:

> We do not cover loss to the property . . . caused by or consisting of:
>
> . . . .
>
> 7.  The failure by any insured person to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss we cover.
>
> . . . .
>
> 9.  Intentional or criminal acts of or at the direction of any insured person, if the loss that occurs:
>
> a) may be reasonably expected to result from such acts; or
>
> b) is the intended result of such acts.
>
> This Exclusion applies regardless of whether or not the insured person is actually charged with or convicted of a crime.

(Id. at 9).  The Policy further excludes "any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance."  (Id. at 5).  An "insured person" is defined in the Policy as "you and, if a resident of your household . . . any relative."  (Id. at 2).

On January 22, 2011, Allstate retained Federated Investigations Service Corp. ("Federated"), to investigate the fire.  (See Investigation Report at 2).  In addition to

3

examining the scene, Federated briefly interviewed Dunfee, her husband, Auclair, and neighbors of the Kincaid residence.  As to the nature of the fire itself, Federated's investigation revealed the following facts, which are undisputed:  1) that the fire occurred sometime before 2:45 a.m., when passersby saw the flames and alerted the neighbors; 2) that the area of origin was a recliner in the living room; and 3) that the recliner had been intentionally ignited, given evidence of flammable liquid pooling and trailing on the floor surrounding it.[2]  (Id. at 9).

       Federated also learned that a neighbor had observed "unusual" activity on the day before the fire. (Id.).  That individual reported witnessing a bald male wearing a hooded sweatshirt carrying tables and other items wrapped in bubble wrap from the Kincaid residence and loading them into a red van, where a woman waited.  (Id. at 9-10).  While the neighbor was unable to identify either person, he believed that neither person was Dunfee or Auclair. (Id. at 10).  Both Dunfee and Auclair deny any knowledge of such activities.  (Auclair's Statement at 47-48; Plaintiff's Statement at 74-75).

---

[2] Federated's conclusions regarding the nature and origin of the fire are consistent with the independent findings of the Office of the West Virginia State Fire Marshal, which also determined that the fire was intentionally set.  Def.'s Mot., Ex. H, Investigation Report of the Office of the West Virginia State Fire Marshal ("Fire Marshal's Report").

Allstate's investigation also revealed inconsistencies between Dunfee's claims for personal property damaged by the fire and her prior, sworn appraisals of the same chattels.  In 2007, Dunfee petitioned for Chapter 7 bankruptcy in the Southern District of West Virginia (See Bankruptcy Filings).  In the course of those proceedings, Dunfee reported household furnishings, appliances, and personal property worth only $894 in total.  (Id. at 18).  Following the fire at the Kincaid residence, however, Dunfee filed claims for lost personal property exceeding $29,000 in value. (See Def.'s Mot., Ex. C, Dunfee Personal Property Inventory Forms).  This is despite the fact that, during the intervening period, Dunfee did not refurnish or make substantial new purchases for the home.  (Plantiff's Statement at 87).  Dunfee attributes this disparity to the different methods used to appraise the property in the two contexts: for the bankruptcy filings, "wholesale/yard sale" value; for the insurance claims, "replacement" cost.  (Aff. of Lynn Dunfee ¶ 9).

Neither Dunfee nor Auclair has been charged with any crime in connection with the destruction of the Kincaid residence.  (Id. at ¶ 16).  Nonetheless, on June 30, 2010, Allstate wrote Dunfee to inform her that, based upon its investigation, Allstate was denying her claim under the policy

5

provisions cited above. (Def.'s Mot., Ex. J, Allstate Coverage Denial Letter 6-7).

On October 15, 2010, Dunfee filed suit in the Circuit Court of Fayette County, West Virginia, alleging breach of contract, bad faith, and violation of the West Virginia Unfair Trade Practices Act ("UTPA").[3] On November 16, 2010, Allstate removed the action to federal court. Allstate now moves for summary judgment on each of Dunfee's claims. In so moving, Allstate contends that: 1) the "intentional acts" and "misrepresentations" exclusions in the Policy bar coverage of Dunfee's insurance claims, and 2) its comprehensive investigation provided a good-faith basis for its decision to deny coverage.

II. Allstate's Motion for Summary Judgment

A. Governing Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and

---

[3] The court construes the allegations in Dunfee's brief complaint — simply that "the acts of the Defendant in denying the Plaintiff's claim constitute bad faith" (Compl. at ¶ 8) — to include both common law and statutory causes of action. This is consistent with the treatment of the issue in Allstate's memoranda, and not inconsistent with Dunfee's own limited argument and analysis.

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B.  Breach of Contract Claim

    1.  Intentional Acts Exclusion

Allstate first seeks summary judgment on Dunfee's breach of contract claim, contending that it properly denied Dunfee's insurance claim on the basis of a valid "intentional acts" exclusion. Specifically, Allstate alleges that Dunfee or her son Joshua Auclair (also an insured) set fire to the Kincaid residence, triggering the exclusion in paragraph 9 of the Policy. In West Virginia, an intentional acts exclusion applies only when an insured "(1) committed an intentional act and (2) expected or intended the specific resulting damage." Syl. Pt. 7, <u>Farmers & Mechanics Mut. Ins. Co. of West Virginia v. Cook</u>, 557 S.E.2d 801 (W. Va. 2001).

In support of this contention, Allstate relies upon a great deal of circumstantial evidence suggesting that Dunfee could have been responsible for the fire at the Kincaid residence. First, Allstate notes that it is undisputed that the fire was intentionally ignited. Further, on the day preceding the fire, neighbors spotted two individuals hauling away furniture and other personal property in an unidentified red van. Auclair himself admits that he left the Kincaid residence late that night, bound for his mother's home roughly four hours

9

away, but did not arrive until the following morning.  Finally, Allstate establishes possible motive by pointing to facts indicating that Dunfee stood to benefit financially from the damage to the Kincaid residence:  both Dunfee's 2007 bankruptcy valuation of the home and her recent attempts to sell the property indicate that it was worth significantly less than the $45,000 face value of the Policy, not including an additional $31,500 in personal property protection.

Allstate is unable, however, to directly link Dunfee or her son to the actual burning of the home, and on this most material fact, Dunfee counters with her own evidence.  Foremost, Dunfee rests her defense on the fact that neither she nor Auclair has ever been convicted, or even charged, with arson or any other crime in connection with the burning of the Kincaid residence.   Further, she has repeatedly asserted in her deposition, sworn statement, and affidavit that she has never been involved in any plot or criminal undertaking in an attempt to destroy her home.

While the mere fact that Dunfee and her son have not been held criminally culpable for the fire does not prove their innocence, it does cast doubt on Allstate's theory, especially in combination with the affidavit and additional evidence set forth by Dunfee in her sworn statement and deposition.  At this

10

stage in the proceedings, that is enough. Taking the facts in the light most favorable to Dunfee, the non-movant, the court finds that there remains a genuine issue of material fact as to whether Dunfee or any other insured person breached the terms of the Policy. Accordingly, Allstate's motion for summary judgment cannot be granted on this basis.

    2. Misrepresentations

Analytically and factually related to the above, but worthy of separate consideration, is Allstate's request for summary judgment based on evidence that Dunfee made material misrepresentations in connection with her claims for personal property lost or damaged by the fire at the Kincaid residence. The Policy plainly excludes coverage for "any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." (Policy at 5). Basic principles of law in this area are well-settled. Insurance contracts may expressly provide that any fraud, false swearing, or willful misrepresentation on the part of the insured in the making of proofs of loss shall forfeit all rights under the policy and bar recovery. Couch on Insurance, 3d Ed. §197:2; see Syl. Pt. 2, Mosrie v. Auto. Ins. Co. of Hartford, Conn., 141 S.E. 871 (W. Va. 1928). "Slight overestimates" will not trigger such a provision. Syl. Pt. 6, Riley v. Aetna Ins. Co., 92 S.E.

417 (W. Va. 1917). Instead, the disparity between the actual value of the property and the claimant's estimate must be so "great" and "out of proportion" as to "plainly evince intent on his part to defraud the insurer." Id.

On this front, Allstate's argument rests on the disparity between Dunfee's personal property claim (in excess of $29,000), and the value of household goods and personal property listed in her 2007 bankruptcy petition ($864). Inasmuch as Dunfee admits that she made no major household purchases between the filing of the bankruptcy petition and the night of the fire, Allstate contends that this is proof that Dunfee misrepresented the nature and value of her personal property losses. Dunfee counters that the discrepancy is the product of differing methods used in assessing the value of her property: "wholesale/yard sale" value for the bankruptcy filing, and "replacement value" on the proof of loss form. The bankruptcy filing and the proof of loss estimate provided by Dunfee are the only evidence in the record of the value of the property in question; there has been no independent assessment of the property's actual value.

The disparity between the competing appraisals of Dunfee's personal property is remarkable. And while it may be unlikely that the difference between "yard sale" and

12

"replacement" value alone accounts for such a vast disparity, the resolution of that issue is reserved for the fact finder. Moreover, the evidence, at best, suggests merely that one of the two appraisals is accurate; the court has no basis for determining which appraisal that might be.  Any inference that might be drawn must at this stage be viewed in the light most favorable to Dunfee.  Finally, on the available evidence, the court is unable to conclude whether, as a matter of law, the disparity between Dunfee's claim and the actual value of the property at issue is a "slight overestimate" or a "great" and "out of proportion" exaggeration.  See Syl. Pt. 6, Riley, 92 S.E. at 417.  Accordingly, the court finds that there remains a genuine issue of material fact on this issue, and Allstate's request for summary judgment on this basis must also fail.

C.   Common Law Bad Faith and UTPA Claims

In addition to her breach of contract claim, Dunfee maintains that Allstate acted in bad faith by refusing to honor her home and personal property claims, and on this basis seeks both compensatory and punitive damages on her common law bad faith and UTPA causes of action. (See Compl. ¶¶ 8-9).  Allstate now asks the court to award summary judgment in its favor on these claims as well.  Essentially, Allstate argues that inasmuch as Dunfee's intentional acts and misrepresentations

13

violated the terms of the Policy, Allstate could not have acted in bad faith by denying her fire loss claims.

Inasmuch as Allstate's argument depends on the assumption that the policy exclusions relieved Allstate of its contractual obligation to Dunfee — a fact that cannot be resolved at this juncture (see supra, part B) — that argument is unavailing. Accordingly, Dunfee's claims, to the extent that she seeks compensatory damages, survive. The question of whether Dunfee is entitled to pursue punitive damages is addressed below.

D.   Punitive Damages

Its request for summary judgment on the entirety of Dunfee's claims falling short, Allstate requests, in the alternative, that the court award summary judgment in its favor as to the availability of punitive damages. Under West Virginia law, the standard for determining whether an insurer should be subject to punitive damages for bad faith finds its origin in Hayseeds, Inc., v. State Farm Fire & Cas., 352 S.E.2d 73 (W. Va. 1986), which held that:

> [P]unitive damages for failure to settle a property dispute shall not be awarded against an insurance company unless the policyholder can establish a high threshold of actual malice in the settlement process. By "actual malice" we mean that the company actually

> knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim. We intend this to be a bright line standard, highly susceptible to summary judgment for the defendant, . . . [citation omitted]. Unless the policyholder is able to introduce evidence of intentional injury- not negligence, lack of judgment, incompetence, or bureaucratic confusion- the issue of punitive damages should not be submitted to the jury.

Id. at 80-81. Without more, a mere "preconceived disposition" to deny an insured's claim is not sufficient to establish bad faith. Id. at 81. Moreover, where a "bona fide dispute" exists regarding coverage, "the insurer's persistence in asserting its position . . . cannot be deemed malicious." Shamblin v. Nationwide Mut. Ins. Co., 396 S.E.2d 766, 773 (W. Va. 1990). Though Hayseeds dealt solely with a claim for common law bad faith, its "actual malice" standard has been applied to claims asserted under the UTPA. McCormick v. Allstate Ins. Co., 505 S.E.2d 454, 459 (W. Va. 1998).

     Dunfee's common law bad faith and UTPA claims are based on the assertion that Allstate "concocted" the theory that Dunfee and/or Auclair were responsible for setting fire to the Kincaid residence. (See Pl.'s Mot. at 3). Simply put, Dunfee points to no evidence suggesting that Allstate acted with "actual malice" in denying her claim. Instead, she relies solely upon the fact that neither she nor Auclair has been arrested or charged with arson in connection with the fire, a

15

fact which has little relevance to the court's determination of whether Allstate actually knew her claim was proper, but nonetheless willfully, maliciously, and intentionally denied it.

To the contrary, Allstate's decision to deny coverage was supported both by its own investigation and by the findings of the West Virginia State Fire Marshal.  It is undisputed that the fire was intentionally ignited.  Neighbors witnessed unidentified individuals removing property from the home mere hours before that fire.  Inasmuch as the value of her home was substantially lower than the face value of the Policy, Dunfee stood to benefit financially from the fire.  And Auclair, the last person seen at the home, left on an unannounced trip shortly before the fire, with no one to account for his whereabouts until the next morning.  In sum, the evidence set forth by Allstate, though inconclusive for purposes of summary judgment (<u>supra</u>, part B), is more than sufficient to establish a good-faith basis for Allstate's decision to deny benefits under the Policy.  Especially in light of the "high threshold" of "actual malice" established by <u>Hayseeds</u> and <u>McCormick</u>, a standard which was explicitly crafted by the Supreme Court of Appeals of West Virginia to be "highly susceptible to summary judgment," the court concludes that, with respect to the elements required for the imposition of punitive damages, no

16

rational trier of fact could find in favor of Dunfee. Accordingly, Allstate is entitled to summary judgment on that issue.

### III. Conclusion

For the foregoing reasons, the court ORDERS as follows:

1. That Allstate's motion for summary judgment as to Dunfee's breach of contract claim be, and it hereby is, denied.
2. That Allstate's motion for summary judgment as to Dunfee's common law bad faith and Unfair Trade Practices Act claims be, and it hereby is, denied.
3. That Allstate's motion for summary judgment as to punitive damages be, and it hereby is, granted.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: September 29, 2011

John T. Copenhaver, Jr.
United States District Judge